**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

TARA B., o/b/o K.A.T.

                              **Plaintiff,**

v.                                                                  **19-CV-1167**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

## DECISION AND ORDER

      Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 14. Plaintiff, on behalf of her minor child, K.A.T., challenges an Administrative Law Judge's determination that K.A.T. is not entitled to benefits under the Social Security Act ("the Act"). Presently before this Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 8, 12. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted and Plaintiff's motion (Dkt. No. 8) is denied.

## PROCEDURAL HISTORY

      On September 3, 2015, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits for her daughter K.A.T., alleging that she has been disabled by irritable bowel syndrome since May 31, 2014. Tr.[1] at 13, 160-66, 184. The

---

[1]Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 6.

application was denied at the initial level and Plaintiff requested review.  Tr. at 13, 58-71.  Administrative Law Judge Michael Carr ("ALJ") conducted an administrative hearing on April 5, 2018.  Tr. at 33-57.  Plaintiff and K.A.T., who were represented by counsel, testified.  Tr. at 33-57.  On July 27, 2018, the ALJ issued a decision finding that K.A.T. was not disabled.  Tr. at 13-27.  The Appeals Council denied her request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-7.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## DISCUSSION

**Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the district court must only decide whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record.  *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir.

1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**SSI Standard for Determining a Child's Disability**

An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act.  *See* 20 C.F.R. §§ 416.924 (a)-(d).

First, the ALJ determines whether the child is engaged in any substantial gainful activity.  20 C.F.R. § 416.924(b).  Second, if the child is not engaged in any substantial gainful activity, the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than a minimal functional limitation."  20 C.F.R. § 416.924(c).  Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  *See Conlin*, 111 F. Supp. 3d at 384-85.

If a child's impairment medically meets or equals a listed impairment, he or she will be found disabled.  20 C.F.R. § 416.924(d)(1).  If not, the ALJ must assess all functional limitations caused by the child's impairments in six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926(a), (b)(1).  A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. §§ 416.926a(d).  "A 'marked' limitation exists when the impairment 'interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities.'"  *Hart v. Colvin,* No. 12-CV-1043-JTC, 2014 WL 916747, at *3 (W.D.N.Y. Mar. 10, 2014) (citing 20 C.F.R. § 416.926a(e)(2)(i)).  "An 'extreme' limitation is an impairment which 'interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities.'"  *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)).

**The ALJ's Decision**

After reviewing the record, the ALJ determined K.A.T. had the severe impairments of irritable bowel syndrome, allergic rhinitis, and migraines.  Tr. at 16.  These impairments did not, in the ALJ's opinion, meet or medically equal a listed impairment.  Tr. at 16-17.  The ALJ then determined that K.A.T. had no limitations in the following domains: acquiring and using information; attending and completing tasks; interacting and relating with others; and moving about and manipulating objects.  Tr. at 22-25.  The ALJ found "less than marked" limitations in the domains of caring for herself, and health and physical well-being.  Tr. at 25-27.  Because K.A.T.'s impairments did not result in two "marked" limitations or one "extreme" limitation, the ALJ concluded that K.A.T. was not disabled.  Tr. at 17-27.

Plaintiff disagrees with the ALJ's decision, and argues that K.A.T. is more limited in the domains of interacting with others, caring for herself, and physical well-being than the ALJ determined. She argues that the ALJ erred by giving "little weight" to the opinion of Dr. Theresa Jaworksi, K.A.T.'s treating psychologist, and "great weight" to that of Dr. Gina Zali, the State Agency consultative examiner. Dkt. No. 8-1, pp. 14-15.

At the time the ALJ decided Plaintiff's claim, she was required to evaluate medical opinions based on several factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (detailing how the Commissioner evaluates opinion evidence for claims filed before March 27, 2017). When an ALJ decides not to give controlling weight to a physician's opinion, he or she must consider whether the medical source examined the claimant; whether the medical source was a treating source; the extent of the treatment relationship; how well the medical source supported his or her opinion with relevant evidence; how consistent the opinion was with the record as a whole; whether the medical source was a specialist; and any other factors that supported or contradicted the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). The ALJ must provide "good reasons" for the weight given to the opinion. *Id.*

Dr. Jaworski's November 2015 letter, which the psychologist prepared for K.A.T.'s application for disability, states:

> [K.A.T] has had difficulty completing tasks independently at home and maintaining social activity with her peers. She is unable to sleep independently and has much difficulty falling asleep. She has difficulty eating certain foods and has to maintain a very regimented diet. She has difficulty at times maintaining her extra-curricular activities because of pain. [K.A.T.] can be reluctant to make plans with peers because she is afraid that she will have pain and have to stop an activity prematurely. She doesn't have any regular

5

>   chores or tasks at home as her mom tries not to add extra stress or
>   expectation beyond attending school.

Tr. at 310.  The ALJ quoted Dr. Jaworski in his decision, but ultimately concluded that her opinion was "exceedingly vague," and was "not consistent with evidence" of K.A.T.'s level of functioning.  Tr. at 21.  The ALJ observed that around the time Dr. Jaworski made her observations, K.A.T.'s doctors noted that she was no longer suffering from abdominal pain, and had been taken off of levsin, a prescription medicine used to treat symptoms of gastrointestinal disorders.  Tr. at 21, 276.  The ALJ also took notice of numerous reports that K.A.T. "typically sleeps 10 hours a night."  Tr. at 21.

In fact, the contemporaneous medical evidence does not support Dr. Jaworski's suggestion that K.A.T. was debilitated by abdominal pain and/or anxiety and had difficulty sleeping.  On October 27, 2015, Dr. Thomas Rossi, K.A.T.'s gastroenterologist, reported that she was doing better, having bowel movements, and that levsin was to be given only when necessary.  Tr. at 274.  K.A.T.'s gastrointestinal difficulties were apparently controlled with a strict gluten free diet and medication.  In March 2016, Dr. Rossi reported:

>   [K.A.T] has been doing well.  Not much headache or abdominal pain and no
>   longer using levsin.  Continues on Amitriptyline 10 mg and [P]rilosec and
>   [M]iralax.  No symptoms at present.  Takes gluten free diet, non-celiac, and
>   mom found hidden source of gluten.  She wants to stop the [A]mitriptyline now
>   that she has [K.A.T.] on a more strict gluten free diet.

Tr. at 276. Plaintiff's primary physician, Terrance O'Connor, consistently reported that K.A.T. was a healthy child who slept 10 hours a night.  Tr. at 615-16 (reporting on 7/7/2014 that K.A.T. participated in ice skating and gymnastics, and typically slept 10 hours a night); Tr. at 618-19 (noting on 12/3/2014 that K.A.T. was physically active, and sleeps 10 hours a

6

night); Tr. at 622 (stating on 12/11/14 that K.A.T. "slept well last night"); Tr. at 632 (noting on 1/22/2015 that K.A.T. was an active child who "[t]ypically sleeps 10 hours a night"); Tr. at 641-42 (stating the same on 6/03/2015); Tr. at 644-45 (stating the same on 12/07/2015).

Although the ALJ did not explicitly discuss each *Burgess* factor when deciding to give Dr. Jaworski's opinion little weight, this does not require remand. The ALJ acknowledged that Dr. Jaworski was a treating source, but articulated "good reasons" for declining to give her opinion controlling weight, specifically, that it was vague and unsupported, and was otherwise contradicted by other evidence in the record. Tr. at 21 (identifying Dr. Jaworski as a "treating psychologist"); 20 C.F.R. § 416.927(c)(3), 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, . . . . [and t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion"); 20 C.F.R. § 404.1527 ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see also Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. Oct. 4, 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physicians' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient 'good reasons' for the weight assigned.").

Plaintiff contends that Dr. Jaworski's opinion was bolstered by a statement by Dr. Susan Baker, Plaintiff's gastroenterologist, on April 24, 2013, that: "The most over-riding concern is [K.A.T.'s] anxiety. This is debilitating her and the sooner it is addressed the

better." Tr. at 256.[2]  The ALJ gave this opinion little weight because K.A.T.'s stomach issues were later improved with appropriate testing and treatments. Tr. at 20. This conclusion is accurate. The record reveals that by December 2014, Plaintiff became very frustrated by Dr. Baker and did not feel like she was helping K.A.T. Tr. at 235. Plaintiff transitioned K.A.T.'s gastroenterology treatment to Dr. Rossi, who put K.A.T. on a gluten free diet. Tr. at 276. The diet greatly improved K.A.T.s' abdominal issues, although Plaintiff sometimes found hidden sources of gluten. Tr. at 276. Dr. Rossi adjusted K.A.T.'s medications to assist with her symptoms. Tr. at 269-95, 315-324, 722-839.

Based on the foregoing, this Court finds that the ALJ properly gave less than controlling weight to Dr. Jaworski's and Dr. Baker's opinion that Plaintiff was debilitated by her anxiety. "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015).

Plaintiff argues that the ALJ erred in relying instead on the opinion of Dr. Zali, the State Agency consultative examiner. Dr. Zali examined K.A.T. on March 16, 2016. Tr. at 324-28. Dr. Zali noted that, at that time, K.A.T.: was in the 6th grade with a GPA of 95.5; saw a psychologist, Dr. Jaworski, every two to three weeks; was diagnosed by Dr. Jaworski with generalized anxiety disorder and somatic symptom disorder; reported that "some days" she had difficulty falling asleep, but had a normal appetite; denied any

---

[2] Dr. Baker's statement was made prior K.A.T.'s alleged disability onset date of May 31, 2014.

significant problems with anxiety and any problems with attention, concentration, hyperactivity, and depression; reported that she was generally happy most of the time, but felt anxious when she has medical symptoms; stated that she had some recent anxiety issues due to the death of the family dog; was independent with personal hygiene and eating; was responsible for feeding the household animals, helping with the dishes, and putting away the laundry; and reported the she has many friends, and participates in dance class, acting, musical theater, and jazz.  Tr. at 324-25.

Upon examination, Dr. Zali found K.A.T.'s demeanor and responsiveness to questions was cooperative.  Tr. at 326.  Her manner of relating was age appropriate.  Tr. at 326.  Her thought processes were coherent, and goal directed.  Tr. at 326.  Her mood was euthymic, and her affect was in the full range and appropriate in speech and thought content.  Tr. at 326.  Her attention and concentration and recent and remote memory skills were intact.  Tr. at 326.  Her intellectual functioning was average.  Tr. at 327. Her insight was age appropriate and her judgment "good."  Tr. at 327.

Based on her findings, Dr. Zali diagnosed K.A.T with somatic symptom disorder and did not rule out generalized anxiety disorder.  Tr. at 327.  She opined that K.A.T. had no limitations in her ability to attend to, follow, and understand age-appropriate directions, complete age-appropriate tasks, maintain appropriate social behavior, respond appropriately to changes in the environment, learn in accordance to cognitive functioning, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions, interact adequately with peers, and interact adequately with adults.  Tr. at 327.  Dr. Zali concluded that "the results of the present evaluation appear to

be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  Tr. at 327.

The ALJ gave Dr. Zali's opinion "great weight" because it was consistent with other evidence in the record.  Tr. at 22.  This is, in fact, the case.  For example, Dr. Zali's opinion is consistent with that of Dr. C. Butensky, the State Agency psychological consultant.  Tr. at 65-68.  State agency consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.  *See* 20 C.F.R. § 404.1527(e)(2)(I).  Although the opinions of non-examining sources are generally given less weight than examining sources, this is not an absolute rule.  In appropriate cases, a non-examining medical expert may override an examining source, even a treating source, if the opinion is supported by evidence in the record.  *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016); *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016); *Monette v. Colvin*, 654 F. App'x 516, 518-19 (2d Cir. 2016).

After reviewing the entire record, Dr. Butensky opined that, in the domain of interacting and relating with others, K.A.T. had a "less than marked" limitation.  Tr. at 66.  Dr. Butensky noted K.A.T.'s statement that she had many friends, and participated in dance class, acting, musical theater, and jazz.  Tr. at 66, 327.  Dr. Butensky acknowledged that K.A.T.'s peer relationships had improved after the school addressed bullying issues.  Tr. at 66.  In the domain of caring for herself, Dr. Butensky opined that K.A.T. had a "less than marked" limitation, as evidenced by Dr. Zali's opinion that K.A.T. could respond appropriately to changes in the environment, ask questions, or request assistance, and Plaintiff's report that K.A.T. could complete age-appropriate activities of daily living.  Tr. at

66, 327.  In the domain of health and physical well-being, Dr. Butensky also opined that K.A.T. had "less than marked" limitations.  Tr. at 66.  She noted that K.A.T. had a history of abdominal pain but, by March 2016, was symptom free.  Tr. at 66.

The ALJ gave the opinion significant weight except for the conclusion that K.A.T. had a less than marked limitation in interacting and relating with others.  Tr. at 20.  Noting K.A.T.'s activities of daily living and overall success in school, the ALJ concluded that she had no limitations in this domain. Tr. at 20.  This was not erroneous.  The law is clear that an ALJ's RFC finding does not need to be based on a particular medical opinion or medical source statement.  *Monroe v. Berryhill*, 676 F. App'x 5, 9 (2d Cir. 2017); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (reasoning that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in h[er] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole").  In this regard, an ALJ may properly discount a portion of the opinion not supported by the medical evidence.  *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (holding that the consultative examiner's opinion that the claimant could not maintain a regular schedule did not bind the ALJ, where the RFC was otherwise consistent with and supported by the examiner's opinion); *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (affirming the ALJ's decision to discount a portion of the consultative examiner's opinion that was not supported by the record); *Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (reasoning that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve[,]" and holding that "it was within the province of the ALJ" to accept parts of a doctor's opinion and reject others).

This Court finds that the ALJ's reliance on Dr. Zali's opinion over that of Dr. Jaworski was not erroneous. The mere fact that Dr. Zali was not a treating physician did not preclude the ALJ from crediting her opinion, because her opinion was consistent with the objective medical evidence. *See Mongeur*, 722 F.2d at 1039 ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . , and the report of a consultative physician may constitute such evidence."); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (holding that the ALJ rightly concluded that the two consultative psychologists' opinions that plaintiff was able to perform unskilled work were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

The ALJ relied on other evidence that K.A.T. was not disabled by anxiety, Insomnia, or other health issues. For example, he noted that her mood and affect were generally normal during physical exams. Tr. at 20. At a well visit in January 2017, Plaintiff had no specific concerns. Tr. at 661. She was stable. Tr. at 661. Her anxiety was "doing well". Tr. at 664. A year later, at a well visit in January 2018, Plaintiff had no specific concerns, her diet was healthy and well-balanced, and she slept nine hours a night. Tr. at 671-72. The ALJ also noted that K.A.T. gets excellent grades in school as well as very positive comments from her teachers. Tr. at 20, 853-63.

In sum, the ALJ evaluated K.A.T.'s functional impairments based on the record as a whole, including testimony from Plaintiff and K.A.T., treatment and school records, and the opinions of Dr. Jaworski, Dr. Baker, Dr. Miller, Dr. Zali, and Dr. Butensky.

Tr. at 17-27.  Plaintiff cites to evidence in the record that Plaintiff had abdominal issues with concurrent anxiety, but has failed to show how those ailments translate to greater deficits than found by the ALJ.  Even if she had, it would not change the outcome.  When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder."  *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (*citing Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also Rutherford*, 685 F.2d at 62 (explaining that courts reviewing the Commissioner's factual findings would be "derelict in our duties" if we "shap[ed] our holding to conform to our own interpretation of the evidence").

       Citing specific support in the record, the ALJ concluded that K.A.T. had no limitations in acquiring and using information; attending and completing tasks; interacting and relating with others; and moving about and manipulating objects (Tr. 22-25), and found that K.A.T. had "less than marked" limitations in the domains of caring for herself; and health and physical well-being (Tr. 25-27).  Because K.A.T. did not have "marked" limitations in two functional domains or an "extreme" limitation in one functional domain, the ALJ correctly concluded that K.A.T. was not under a disability.  Tr. at 27.

       Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record[,] and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**."  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d

443, 448 (2d Cir. 2012) (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         March 1, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**